UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AHMIA G.,

                                    Plaintiff,

v.                                                      5:22-CV-01104
                                                         (TJM/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                         OF COUNSEL:


OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
  *Attorneys for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.          JASON P. PECK, ESQ.
  *Counsel for Defendant*            VERNON NORWOOD, ESQ.
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge


## REPORT-RECOMMENDATION

        Plaintiff Ahmia G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her applications for Child's Insurance Benefits and Supplemental

Security Income ("SSI"). (Dkt. No. 1.)  This matter was referred to me for Report and

Recommendation by the Honorable Thomas J. McAvoy, United States Senior District Court

Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 7.)  This case has

proceeded in accordance with General Order 18. Currently before this court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 15, 18.) Plaintiff has also filed a reply brief. (Dkt. No. 19.) For the reasons set forth below, this court recommends that the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the Commissioner's decision for further administrative proceedings.

## I.    **PROCEDURAL HISTORY**

Plaintiff's mother protectively filed an application for SSI on her behalf on August 2, 2017 and filed an application for Child's Insurance Benefits on August 29, 2017, each alleging disability dating from December 1, 2008. (Administrative Transcript ("T.") 360-365.) These applications were denied initially on January 18, 2018. (T. 140-165.) Plaintiff's request for a hearing was granted. (T. 217-218, 240-246.) On August 20, 2019, Plaintiff, Plaintiff's mother, and vocational expert ("VE") David Festa testified before Administrative Law Judge ("ALJ") Jennifer Smith. (T. 86-128.) The ALJ issued an unfavorable decision on September 9, 2019. (T. 166-192.) The Appeals Council vacated this decision on February 22, 2021 and remanded back to the same ALJ for consideration of additional medical evidence. (T. 193-198.)

On August 3, 2021, the ALJ held a telephonic hearing at which Plaintiff and VE Sakinah Malik testified. (T. 42-80.) The ALJ issued a new unfavorable decision on August 12, 2021. (T. 8-41.) The Appeals Council denied Plaintiff's request for review on August 30, 2022. (T. 1-7.) Plaintiff commenced this proceeding on October 25, 2022 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1.)

2

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

3

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence

supports the ALJ's findings they must be sustained "even where substantial evidence may

support the plaintiff's positions and despite that the court's independent analysis of the evidence

may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

### B.    Standard for Benefits[1]

### 1.    Childhood Disability

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if

he or she has a medically determinable physical or mental impairment, which results in marked

and severe functional limitations, and which can be expected to result in death, or which has

lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §

1382c(a)(3)(C)(i); *see Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *3-4

(N.D.N.Y. Apr. 30, 2009) (discussing the standard for children's disability benefits).  However,

the definition provision excludes from coverage any "individual under the age of [eighteen] who

engages in substantial gainful activity. . . ."  42 U.S.C. § 1382c(a)(3) (C)(ii).

The agency has developed a three-step process to be employed in determining whether a

child can meet the statutory definition of disability.  20 C.F.R. § 416.924; *Kittles v. Barnhart*,

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then by statute and by regulation, the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3) (C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examination of whether he or she suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If the child is found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1. *Id.* Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

"Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or medically equal the criteria for a listed impairment. Analysis of functionality involves considering how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (1) acquiring and using information;

(2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established by finding an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added). Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

### 2.    Adult Disability

To be considered disabled as an adult, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,

> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.    **FACTS**

Plaintiff was seventeen years old when her mother applied for benefits on her behalf, and

had turned twenty-one years old by the date of the ALJ's August 12, 2021 decision. (T. 360-

365.) She is a high school graduate who was home schooled at times when her physical

impairments impacted her attendance. (T. 628, 743, 773.) She had attended a two year college

with plans to transfer to a four year school but testified at her August 3, 2021 hearing that she

7

had left school in March 2020 due to the COVID-19 pandemic and pain from her physical impairments. (T. 49-50, 768, 827.)  Plaintiff has never held full-time employment but had worked part-time positions as a hostess at a family restaurant/entertainment center and an aide in the dietary/food service department of a nursing home. (T. 768.)  She was not working at the time of the ALJ's decision. (T. 49.)  At all relevant times, Plaintiff resided with her mother. (T. 52.)

Plaintiff has been treated for juvenile arthritis or rheumatoid arthritis since 2011. (T. 628.)  She described the condition as causing pain and stiffness in her wrists, elbows, and ankles. (T. 628, 781.)  She described continual pain that became exacerbated with prolonged activity and reported that cold weather frequently caused her hands to "lock up." (T. 767, 773, 781.)  Plaintiff reported that the arthritis pain also made it difficult to walk for extended periods, lift or carry heavier weights, and perform fine motor activities such as cutting food and using buttons or zippers. (T. 935-936.)

The record includes Plaintiff's educational and medical history.  Rather than summarizing these records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.    THE ALJ'S AUGUST 12, 2021 DECISION

After summarizing the procedural history of Plaintiff's claim and the remand order from the Appeals Council, the ALJ first considered Plaintiff's eligibility for child's disability benefits from the application date through her eighteenth birthday. (T. 17.)  After finding that Plaintiff had not engaged in substantial gainful activity since the application date, the ALJ found that Plaintiff had the following severe impairments before attaining age 18: "juvenile arthritis, rheumatoid arthritis, and nondisplaced fracture of the distal phalanx of right little finger." (T. 17-

18.)  Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment. (T. 19.)

The ALJ continued her analysis and found that Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of a Listed Impairment. (T. 19-21.)  Based upon her review of the evidence regarding Plaintiff's functional limitations prior to attaining age 18, the ALJ found that Plaintiff had "less than marked" limitations in her ability to move about and manipulate objects and with regard to the broader category of health and physical well-being. (T. 21-26.)  She found that Plaintiff had no limitations with regard to her ability to acquire and use information; attend and complete tasks; interact and relate with others; and care for herself. (*Id*.)

Because Plaintiff did not have a "marked" limitation in two or more of the functional domains and did not have an "extreme" limitation in any one domain, the ALJ found that Plaintiff was not disabled prior to attaining age 18. (T. 26.)  Next, the ALJ concluded that Plaintiff had not developed any new impairments since she turned 18 years old. (*Id*.)  The ALJ then found that Plaintiff continued to have severe impairments after her eighteenth birthday, but that none of these impairments or combination of impairments met or equaled a Listed Impairment. (T. 27.)

Based on her review of the record and Plaintiff's testimony, the ALJ determined that, since attaining age 18, Plaintiff had the RFC to perform less than the full range of light work. Specifically, the ALJ found:

> . . . claimant can frequently reach, handle, finger, and feel.  The claimant should not climb ladders, ropes and scaffolds.  The claimant can occasionally balance as defined in the SCO, kneel, crouch, crawl, climb ramps and stairs, and stoop.  The claimant can occasionally push and pull.  The claimant should not work in extreme cold conditions.

9

(T. 27-31.)

Next, the ALJ found that Plaintiff had no past relevant work. (T. 31.)  Relying on the VE

testimony, the ALJ found that Plaintiff was capable of performing jobs that existed in significant

numbers in the national economy. (T. 31-32.)  Thus, the ALJ found that Plaintiff was not

disabled from the application date of August 2, 2017 through the date of her decision. (T. 32.)

This covered the entire period for which Plaintiff sought child's disability benefits and SSI. (T.

32-33.)

## V.    <u>ISSUES IN CONTENTION</u>

Plaintiff argues that the ALJ improperly evaluated the persuasiveness of the medical

opinion evidence, particularly the opinions from Plaintiff's treating rheumatologist, Dr. Caitlin

Deluca, and consultative examiner Dr. Elke Lorensen. (Dkt. No. 15 at 10-16.)  Specifically,

Plaintiff contends that the ALJ failed to properly consider the supportability and consistency of

Dr. Deluca's opinion regarding Plaintiff's ability to meet the pace and duration requirements of a

typical workday, and Dr. Lorensen's opinion regarding Plaintiff's reaching ability. (*Id*.)

The Commissioner contends that Dr. Deluca's assessment should not be considered a

medical opinion under the applicable regulations, and therefore the ALJ was not required to

evaluate its supportability and consistency. (Dkt. No. 18 at 9-10.)  The Commissioner further

contends that the ALJ's analysis of Dr. Lorensen's opinion was supported by substantial

evidence. (*Id*. at 10-12.)

For the reasons set forth below, this court recommends that Plaintiff's motion for

judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be

denied, and this case be remanded to the Social Security Administration for further

administrative proceedings to allow proper evaluation of Dr. Deluca's opinion and further development of the record as necessary.

## VI.    RFC AND MEDICAL OPINION EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*,

737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he

---

[2]  Plaintiff's applications were dated August 2, 2017 and August 29, 2017. (T. 360-365.) Thus, the new regulations apply in this case.

or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3. Developing the Record

Given the remedial intent of the Social Security statute and the non-adversarial

nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). "This entails a heightened obligation to ensure both the completeness and the fairness of the administrative hearing." *Id.* (citing C*ullinane v. Sec. of Dep't of Health and Human Services of U.S.*, 728 F.2d 137, 137 (2d Cir. 1984) (describing an ALJ's "affirmative duty to ensure that pro se disability insurance benefit claimants receive full and fair hearings")).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination. 20 C.F.R. §§ 404.1512(e), 416.912(e). Although the ALJ must attempt to fill in any obvious gaps in the administrative record, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records." *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting *Johnson v. Comm'r of Soc. Sec.*, No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018)).

**B.    The ALJ's Evaluation of Dr. Deluca's Letter Was Not Supported by Substantial Evidence.**

In a brief letter dated July 11, 2017[3], Dr. Deluca opined that Plaintiff:

> has a diagnosis of juvenile idiopathic arthritis.  She is followed closely for thi[s] condition and is maintained on several medications and therapies.  Please be aware that she [] need extra time or help with certain physical activities.

(T. 591.)  Under the heading "Restrictions," Dr. Deluca wrote, "Please allow her to work limited hours as tolerated by [Plaintiff]." (*Id.*)

In her August 12, 2021 decision, the ALJ deemed this letter to be unpersuasive because she found it to be contradicted by July 23, 2017 treatment notes from Dr. Deluca's practice, "which indicated that the claimant was doing well on infusion, and she denied any fevers, rashes, and cold symptoms," and where Plaintiff reported that she was "in her 'normal state of health.'" (T. 29, 592.)  The ALJ continued,

> The claimant's general physical examination was described as unremarkable. [citation omitted] While undersigned has interpreted the need for "help with certain physical activities" to mean that the claimant should avoid heavier exertional work activity, the other aspect of the letter that allows the claimant to limit her hours is not consistent with any clinical finding, or updated medical records showing only minimal active disease in her right wrist [citation omitted]. In addition, the claimant was not taking any Methotrexate or steroids [citation omitted].  Furthermore, in September 2018, Dr. Deluca indicated that the claimant was doing very well, and advised that she was able to attend school and work without impairment. [citation omitted]

(T. 29.)

---

[3] The copy of Dr. Deluca's one page letter is truncated on the right side, so that one or more words are incomplete or missing. (T. 591.)

1.    **Dr. Deluca's Letter Meets the Regulatory Definition of Medical Opinion.**

The Commissioner's brief does not address the substance of the ALJ's analysis of Dr. Deluca's opinion. (Dkt. No. 18 at 9-10.)  Instead, the Commissioner argues that Dr. Deluca's assertion that Plaintiff would "need extra time or help with certain physical activities" and should "work limited hours as tolerated" is not a medical opinion as that term is used in the applicable regulations. (*Id*. at 10.)  If the letter from Dr. Deluca is not a medical opinion, then the ALJ had no obligation to evaluate its supportability or consistency.  *See Michael H. v. Saul*, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021) (finding that medical examination notes did not qualify as a medical opinion because they did not discuss what Plaintiff is still capable of doing).  Therefore, this court will consider the Commissioner's threshold argument first.

On the facts of this case, the Commissioner's argument is unconvincing.   First, it is evident from her August 12, 2021 decision[4] that the ALJ considered Dr. Deluca's letter to be a medical opinion subject to 20 CFR § 416.927, as she explained that she "was not very persuaded" by the letter. (T. 29.)  The ALJ's decision not only invokes the regulatory "persuasiveness" standard but also uses identical language to her separate analysis of the medical opinion of an orthopedic surgeon who operated on Plaintiff's hand in July 2017. (T. 21.)

Moreover, the ALJ's narrative analysis of Dr. Deluca's letter demonstrates the ALJ's attempt to consider the supportability and consistency factors by comparing its assessment to the rheumatologist's treatment notes and portions of the broader medical record.  *See Jeremy S. v.*

---

[4] The ALJ's original September 9, 2019 decision on Plaintiff's applications for benefits is even more explicit, describing the same letter as "Dr. Deluca's and RN Maley's opinion." (T. 184.)  RN Maley is a nurse who prepared the letter on behalf of Dr. Deluca. (T. 591.)

*Comm'r of Soc. Sec.*, No. 21-CV-1190SR, 2023 WL 6377338, at *5 (W.D.N.Y. Sept. 30, 2023) ("Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record.") (internal citations omitted).  The Appeals Council never raised any concerns about the status of Dr. Deluca's letter. (T. 1-7, 195-198.)  Indeed, the Commissioner has not suggested Dr. Deluca's letter falls outside the regulatory definition of "medical opinion" until this judicial proceeding.  The court must reject this post-hoc rationalization, even if it were colorable.  *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012) ("[T]his Court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.") (internal quotations and citation omitted).

Even if the Commissioner had raised this issue during the administrative process, Dr. Deluca's letter would still meet the definition of medical opinion despite its brevity.  This is not a case where the physician offered only "simple conclusory statements that [Plaintiff] was disabled."  *See Kathryn D. v. Comm'r of Soc. Sec.*, No. 19-CV-1550-LJV, 2021 WL 195342, at *4 (W.D.N.Y. January 20, 2021) ("Of course, opinions on the ultimate issue reserved to the Commissioner did not bind the ALJ.").  The applicable regulations[5] define a "medical opinion"

---

[5] The prior regulations, applicable to claims filed before March 27, 2017, define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  The amended regulations, applicable to claims like Plaintiff's that have been filed after March 27, 2017, removed "judgments about the nature and severity of your impairments" as well as "diagnosis" and "prognosis" from the definition of "medical opinions" and placed them in the definition of "other medical evidence." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the "ability to perform the physical," mental, and "other demands of work activities" as well as in the "ability to adapt to environmental conditions." *See Lisa A. S. v. Kijakazi*, No. 5:21-CV-00078 (BKS/CFH), 2022 WL 4494189, at *2 (N.D.N.Y. Sept. 28, 2022) (citing 20 C.F.R. §§ 404.1513(a)(2)(i)–(iv), 416.913(a)(2)(i)(A)–(D)).  Although her letter was short, Dr. Deluca offered her opinion about what Plaintiff could still do despite her functional limitations – namely, that Plaintiff can still perform some work activities so long as she received accommodations with regard to hours worked, pace, and physical exertion.  *See Lisa A.*, 2022 WL 4494189, at *3 (finding that statements did not qualify as medical opinion because physician did not "indicate what Plaintiff 'can still do' despite a 'likely' impairment in her social skills, ability to concentrate, and ability to work with others."); *Michael H.*, 2021 WL 2358257, at *6 (finding that medical progress note did not constitute a medical opinion because, "[w]hile it discusses Plaintiff's limitations, it does not discuss what Plaintiff is still capable of doing."); *Kimberly B. v. Comm'r of Soc. Sec.*, No. 5:22-CV-350 (ATB), 2023 WL 3318488, at *10 (N.D.N.Y. May 9, 2023) (finding neuropsychological report did not meet regulatory definition of medical opinion because it described plaintiff's attention, concentration, and conceptual tracking as "a relative weakness"  but "did not discuss her ability to perform tasks despite the limitation.").[6]  Therefore, even though the question of whether or not a medical professional's

---

[6] The ALJs in the cited cases never evaluated the persuasiveness of the purported medical opinions.  *Kimberly B.*, 2023 WL 3318488, at *6; *Lisa A.*, 2022 WL 4494189, at *3; *Michael H.*, 2021 WL 2358257, at *5.  In other words, the Commissioner held a consistent position throughout the administrative and judicial proceedings that the various reports were not medical opinions.  On procedural grounds, they are thus readily distinguishable from this case, where the Commissioner challenges the status of Dr. Deluca's letter for this first time before this court.

report qualifies as a "medical opinion" is often a "close call," Dr. Deluca's letter fits squarely

within the current regulatory definition, and this court thus recommends rejection of the

Commissioner's contrary contention.  *See Michael H*., 2021 WL 2358257, at *6 (contrasting old

and new regulatory definitions of medical opinion).

> ### 2.    The ALJ Failed to Properly Consider the Persuasiveness of Dr. Deluca's Opinion.

Plaintiff's brief accurately identifies several flaws in the ALJ's analysis of the

supportability of Dr. Deluca's opinion. (Dkt. No. 15 at 12-14.)  To begin with, the ALJ's

conclusion that the opinion is contradicted by treatment notes is inaccurate.  Treatment notes

from Dr. Deluca's practice regularly note Plaintiff's difficulty working longer than four or five

hour shifts at her part-time job due to aggravation of her arthritis symptoms. (T. 771, 776, 930,

933.)  These records arguably support the durational limitations in Dr. Deluca's opinion and run

contrary to the ALJ's finding that the record did not suggest any potential impact on Plaintiff's

ability to work a traditional eight hour day.

Likewise, the ALJ cites a single September 3, 2019 note describing imaging results

"showing only minimal active disease in her right wrist" to find that Dr. Deluca's opinion

overstates the functional limitations imposed by Plaintiff's arthritis symptoms. (T. 29, 934.)  At

the same time, the ALJ apparently ignores discussion in the same notes of "extreme restriction in

extension" of the left wrist, and restriction in flexion of the right wrist and little finger. (T. 934.)

Plaintiff's brief identifies a litany of other objective findings from July 2017, July 2018,

September 2018, and April 2019 treatment notes documenting reduced flexion, extension or

range of motion in Plaintiff's wrists. (T. 593, 649, 766, 772, 775, 778, 934.)  None are referenced

by the ALJ in her discussion of Dr. Deluca's opinion, and all suggest potentially greater restrictions than those found in the RFC.

Similarly, the ALJ notes that Plaintiff was not taking a prescribed arthritis medication, Methotrexate, or steroids in September 2019, and interprets this to mean Plaintiff was doing well in managing her symptoms. (T. 29, 930.)  The ALJ cites no medical opinion to support this theory.  Instead, the ALJ creates the appearance that she is "playing doctor" by ignoring the accompanying note that Plaintiff "stopped taking the methotrexate due to minimal improvement and side effects with headaches." (T. 930.)  *See Manzella v. Comm'r of Soc. Sec.*, No. 20-CIV-3765 (VEC/SLC), 2021 WL 5910648, at *14 (S.D.N.Y. Oct. 27, 2021), *report and recommendation adopted*, 2021 WL 5493186 (S.D.N.Y. Nov. 22, 2021) ("ALJs may not, of course, " 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record.").

The ALJ's application of the consistency factor when evaluating the persuasiveness of Dr. Deluca's opinion also suffers from defects.  For example, the ALJ's analysis of Dr. Deluca's opinion makes no reference to Dr. Lorensen's potentially consistent findings that Plaintiff had "moderate to marked limitations" pushing and pulling with her hands, and "moderate" limitations in reaching. (T. 630-631.)  The courts in this Circuit have recognized that an ALJ should not consider the persuasiveness of each medical opinion "in a vacuum," but must adequately account for the consistency of the various opinions with each other.  *See Mallorie M. v. Comm'r of Soc. Sec.*, No. 3:21-CV-891 (MAD/ATB), 2022 WL 19078137, at *12 (N.D.N.Y. December 22, 2022) (collecting cases), *rep. rec. adopted*, 2023 WL 2563209 (N.D.N.Y. March 17, 2023); *Ingrid T.G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-5651 (GRJ), 2022 WL 683034, at *8 (S.D.N.Y. March 8, 2022) (". . . in finding the assessments of disabling pain and phobias unpersuasive, the ALJ was required to address and account for the fact that the treating providers

were united in their belief that Plaintiff's symptom experience was plausible, pervasive, and preclusive of sustained work activity."); *see also Gary F. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6735-LJV, 2022 WL 16540354, at *3 (W.D.N.Y. October 28, 2022) (finding ALJ erred when he "did not even acknowledge the substantial similarities between" two opinions). The ALJ also never compared the limitations described by Plaintiff's treating rheumatologist with June 2019 MRI results showing "advanced arthritic changes involving the right wrist" nor with imaging reports from December 2020 showing "deformity of the [left] wrist that may be chronic." (T. 649.)

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot " 'pick and choose' evidence in the record that supports [her] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010). Remand is appropriate where the ALJ's decision appears to only cite medical evidence unfavorable to the application for benefits. *See Rosemary B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-241 (ATB), 2022 WL 11130736, at *5 (N.D.N.Y. October 19, 2022) (finding ALJ's selective citation of medical record created appearance of "cherry-picking" record and was legal error requiring remand). Here, the ALJ omits relevant medical evidence that suggests greater physical functional limitations than set forth in the RFC, and such error cannot be considered harmless.

Accordingly, this court recommends remand for further administrative proceedings to evaluate the medical opinion of Dr. Deluca in accordance with the applicable regulations, and if necessary, further development of the record regarding Plaintiff's functional limitations.

**C.     The ALJ's Evaluation of Dr. Lorensen's Opinion Regarding Reaching Limitations Does Not Present Independent Grounds for Remand.**

Proper consideration of Dr. Deluca's opinion and the potential need for further development of the record on remand is likely to impact the ALJ's analysis of the other medical opinion evidence, including those addressing manipulative limitations such as reaching. Therefore, if the District Court adopts this court's recommendation for proper remand for evaluation of Dr. Deluca's opinion, it need not address Plaintiff's discrete challenge to the ALJ's evaluation of Dr. Lorensen's consultative opinion with regarding to Plaintiff's reaching ability. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-6844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").  Still, this court has reviewed Plaintiff's second argument to determine if it presents independent grounds for remand.  As set forth below, this court recommends that the district court find that the ALJ's rejection of the reaching restrictions set out in Dr. Lorensen's opinion does not, on its own, present grounds for remand.

**1.    The ALJ Marshaled Substantial Evidence to Find Dr. Gandhi's Opinion More Persuasive than Dr. Lorensen's Opinion.**

Dr. Lorensen conducted a consultative physical examination of Plaintiff on January 4, 2018.  Based upon her examination, she opined that Plaintiff had

> [n]o gross limitations sitting, standing, walking or handling small objects with the hands.  Moderate limitations for bending, lifting, reaching, kneeling, and squatting.  Moderate to marked limitations pushing and pulling with the hands.

(T. 630-631.)  The ALJ rejected the "manipulative limitations identified by Dr. Lorensen" as "not fully supported by the objective evidence in the record, including her own evaluation of [Plaintiff]." (T. 28.)  Instead, the ALJ found the opinion of Dr. Gandhi, the non-examining state agency consultant who reviewed Plaintiff's then-current medical records, including the consultative examination report, to be more persuasive. (*Id*.).

On January 11, 2018, Dr. Gandhi opined that Plaintiff was capable of performing a range of light work activity but was limited to only occasionally climbing ramps, stairs, or ladders, balancing, stooping, kneeling, crouching, and crawling. (T. 148-149.)  Most relevant to this proceeding, Dr. Gandhi also opined that Plaintiff could only occasionally use her arms to push or pull, but otherwise had no manipulative restrictions, such as reaching. (T. 149, 160-161.)  In an accompanying narrative labeled "Additional Explanation," Dr. Gandhi cited the consultative examination results showing full range of motion of the forearms and hands bilaterally, and reduced dorsiflexion in the wrists. (T. 161.)  The state agency consultant also referenced a March 23, 2017 x-ray of Plaintiff's right wrist showing marked arthritic changes, and rheumatology treatment notes from July 17, 2017 documenting "severe loss of motion with flexion/extension in the bilateral wrists." (*Id*.)

The ALJ explained her general reasoning for favoring the opinion of Dr. Gandhi:

Dr. Gandhi's opinion is supported by a narrative rationale, which cites evidence from the record. [citation omitted]  Furthermore, the updated evidence received since Dr. Gandhi rendered his opinion continues to support the ability to perform light work.  For instance, progress notes from April 30, 2019 indicated that [Plaintiff] was doing relatively well, and that she was currently enrolled at [college]. . . . She also was working four-to-five hour shifts at a nursing home. The medical examiner also noted that she was doing generally well during her visit in November 2018 [citation omitted].  Updated medical records showing only minimal active disease in her right wrist [citation omitted].  In addition, [Plaintiff] was not taking any Methotrexate or steroids [citation omitted], and the record contains limited updated rheumatology records as she only resumed treatment on July 6, 2021.

(T. 28.)  The ALJ also explained why she rejected Dr. Lorensen's more restrictive opinion

regarding Plaintiff's ability to reach:

Specifically, the manipulative limitations identified by Dr. Lorensen are not fully supported by the objective evidence in record, including her own evaluation of [Plaintiff].  Instead, physical therapy records noted that [Plaintiff] had full range of motion of the shoulders [citation omitted].  Dr. Lorensen also indicated that [Plaintiff] had intact hand and finger dexterity and 5/5 grip strength bilaterally [citation omitted].  On April 30, 2019, [Plaintiff] reported that despite experiencing some worsening pain in her right wrist and shoulder and ankle, her joints are not limiting, for the most part, from her day-to-day activity [citation omitted].  On September 3, 2019, hospital records noted that she had "minimal active disease in the right wrist," as shown by diagnostic images, and during the evaluation, she had no active signs of arthritis [citation omitted].  While the undersigned has included manipulative restrictions within the established residual functional capacity, these restrictions do not rise to the level identified by Dr. Lorensen.

(*Id.*)

Plaintiff contends that remand is required due to the ALJ's erroneous rejection of Dr.

Lorensen's opinion of Plaintiff's ability to reach and her misplaced reliance on Dr. Gandhi's less

restrictive opinion, that led the ALJ to omit any reaching limitations from the RFC

determination. (Dkt. No. 15 at 15-16.)  Plaintiff argues that the purported error was particularly

harmful because all of the representative occupations identified by the VE required frequent

reaching. (T. 72-73.)

"[W]hen supported by evidence in the record, the opinion of a nonexamining physician can also constitute substantial evidence." *Rose o/b/o X.G.T.A. v. Berryhill*, No. 18-CV-509 (LGS) (SN), 2019 WL 2453352, at *3 (S.D.N.Y. Feb. 4, 2019), *adopted by* 2019 WL 2498279 (S.D.N.Y. June 17, 2019); *see also Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.") (summary order); *Jeremy B. v. Comm'r of Soc. Sec.*, No. 6:21-CV-903 (GTS/DJS), 2023 WL 2838052, at *5 (N.D.N.Y. Jan. 12, 2023) ("State agency consultants are specifically recognized as 'highly qualified and experts in Social Security disability evaluation.'").  As set forth in her decision, the ALJ relied upon a broad spectrum of evidence in the record to find Dr. Gandhi's opinion regarding manipulative limitations more persuasive than that of Dr. Lorensen.  In particular, the ALJ cited physical examination reports showing full range of motion or extension in the shoulders, elbows and forearms, consultative examination results showing full range of motion and dexterity in the forearms and hands, and imaging reports showing arthritic changes were limited to the wrists. (T. 28, 598, 630.)  The ALJ also expressly considered medical examination reports dated after the consultative opinions, including rheumatology notes from July 2021, and found no evidence of additional reaching restrictions. (T. 28, 1072-1076.)   Beyond the medical reports, the ALJ also considered Plaintiff's daily activities including cooking, cleaning, and laundry, her college attendance and her plans for future education. (T. 30-31, 52, 827.) Plaintiff's hearing testimony focused on pain in her hands, wrist, and ankles, but did not identify any specific limitations with regard to reaching. (T. 63, 91-92.)

As set out above, this court concludes that the ALJ considered the supportability and consistency of both the Lorensen and Gandhi opinions on Plaintiff's ability to reach in

accordance with the regulations and within the context of the available record. "[I]t is not the function of the reviewing court to reweigh the evidence." *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). Accordingly, this court recommends dismissal of Plaintiff's discrete challenge to the ALJ's evaluation of Dr. Lorensen's opinion as it does not present an alternate ground for remand.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be **<u>GRANTED</u>**; Defendant's motion for judgment on the pleadings (Dkt. No. 18) be **<u>DENIED</u>** and that the matter be **<u>REVERSED AND REMANDED</u>** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated:    October 25, 2023
          Binghamton, NY


Miroslav Lovric
U.S. Magistrate Judge